Peter Fox, Esq.
SCOOLIDGE PETERS RUSSOTTI & FOX LLP
2 Park Avenue, 20th Floor.
New York, New York 10016
Telephone: 212-729-7708

*Attorneys for the Foreign Representative*
*of Agro Santino OOD*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Agro Santino, OOD<br><br>Debtor in a Foreign Proceeding | Chapter 15<br><br>Case No. _____ |

**VERIFIED PETITION FOR RECOGNITION**
**OF THE BULGARIAN BANKRUPTCY PROCEEDING AND MOTION**
**FOR ORDER GRANTING RELIEF PURSUANT TO**
**11 U.S.C. §§ 105(a), 1509(b), 1515, 1517 AND 1520(a)**

Yordanka Ivanova Panchovska, the foreign representative ("Petitioner" or the "Foreign Representative") in the Bulgarian insolvency proceeding, case number 20215500901241 (the "Bulgarian Bankruptcy Proceeding"), of Agro Santino OOD ("Agro") in the Stara Zagora District Court (the "Bulgarian Court") in Stara Zagora, Bulgaria pursuant to Chapters 38 through 58 of the Bulgarian Commercial Code (the "Bulgarian Bankruptcy Law") by and through my undersigned counsel, respectfully submit this *Verified Petition for Recognition of the Bulgarian Bankruptcy Proceeding and Motion for Order Granting Final Relief Pursuant to 11 U.S.C. §§ 105(a), 1509(b), 1515, 1517 and 1520(a)* (the "Verified Petition"). This Verified Petition is filed in furtherance of the *Official Form Petition* (together with this Verified Petition, the "Petition") filed contemporaneously herewith, and it is hereby requested that the Court enter an order substantially in the form annexed hereto as Exhibit A (the "Proposed Order") pursuant to

sections 105(a), 1509(b), 1515, 1517 and 1520(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"): (i) commencing a case for Agro under chapter 15 ancillary to the Bulgarian Bankruptcy Proceeding (the "Chapter 15 Case"); (ii) granting recognition of the Bulgarian Bankruptcy Proceeding pursuant to section 1517 of the Bankruptcy Code as a "foreign main proceeding" (as defined in section 1502(4) of the Bankruptcy Code) of Agro, and all relief included therewith as provided in section 1520 of the Bankruptcy Code; (iii) recognizing the Petitioner as the "foreign representative" (as defined in section 101(24) of the Bankruptcy Code) of the Bulgarian Bankruptcy Case for purposes of this Chapter 15 Case; and (iv) granting such other and further relief as the Court deems just and proper.

In support of this request, the Petitioner relies upon and incorporates by reference: (i) the *Declaration of Yordanka Ivanova Panchovska in Support of Motion for Provisional Relief Pending Recognition of a Foreign Main Proceeding Pursuant to 11 U.S.C. §§ 1519, 105(a) and 362, Verified Petition Under Chapter 15 for an Order Granting Recognition of the Bulgarian Bankruptcy Proceeding and Motion for Order Granting Relief Pursuant to 11 U.S.C. §§ 105(a), 1509(b), 1515, 1517, and 1520(a) and Related Procedural Motions* (the "Foreign Representative Declaration") filed concurrently herewith; (ii) the *Lists and Statements Filed Pursuant to Bankruptcy Rule 1007(a)(4)* filed concurrently herewith; and (iii) the *Statement of Foreign Representative Filed Pursuant to 11 U.S.C. 1515(c)* filed concurrently herewith.

In further support of this Motion, the Petitioner respectfully represents to the Court as follows:

2

## PRELIMINARY STATEMENT

On March 11, 2022, the Bulgarian Court granted a petition by StoneX Markets LLC (formerly known as INTL FCStone Markets, LLC) ("StoneX") and another creditor to involuntarily place Agro into bankruptcy in Bulgaria.  StoneX, which is a futures commission merchant, had standing to commence a bankruptcy proceeding against Agro based on a claim for breach of a swaps and over-the-counter derivatives account agreement that it has also been prosecuting before Judge Furman in the U.S. District Court for the Southern District of New York since March 2020 (the "New York Litigation").[1]  Agro fiercely disputes the validity of StoneX's claim and filed a counterclaim in the New York Litigation.

Despite commencing the Bulgarian Bankruptcy Proceeding – which entails an automatic stay of all litigation against Agro – and thus far progressing toward allowance of its claim therein, StoneX has continued to aggressively pursue the same claim in the New York Litigation.  On June 2, 2022, it filed three motions against Agro (the "StoneX Motions"), including a second motion for summary judgment.  (StoneX's first motion for summary judgment was denied in June of 2021.)

StoneX's ongoing prosecution of the New York Litigation in parallel to the Bulgarian Bankruptcy Proceeding is straining Agro's resources and subverting the principle – fundamental under both U.S. and Bulgarian bankruptcy law – that claims against a debtor be consolidated and resolved in a single proceeding.  Indeed, the continuation of the New York Litigation is causing a duplication of party and judicial efforts, risking inconsistent rulings, and generally undermining the authority of the Bulgarian Court to supervise and control the claims against Agro.

---

[1] The case is INTL FCStone Markets LLC v. Agro Santino OOD, No. 20-CV-2658 (JMF) (S.D.N.Y.)

Accordingly, the Petitioner, on behalf of the Agro, commenced the Chapter 15 Case to seek recognition of the Bulgarian Bankruptcy Proceeding as a foreign main proceeding with respect to Agro and corresponding application of the automatic stay to the New York Litigation.[2]

## BACKGROUND

### A.    Agro's General Background and History

1.      Agro – as the name implies – is agricultural producer.  For approximately 14 years, it grew wheat, sunflowers, corn and other crops, mostly on land leased from third parties in the northern Danube plain in Bulgaria.  Foreign Rep. Decl. ¶ 11.  Agro would sell its crops for distribution on the European market.  These operations ceased in 2020 after StoneX secured a court order for a pre-judgment lien against all of Agro's bank accounts in Bulgaria (Agro has no accounts in any other country) based on its claim for breach of contract.  Id. ¶ 15.  The lien froze the bulk of Agro's liquid assets and prevented any further investment in the company needed to continue its farming operations.  Id. ¶¶ 8, 15.

2.      On September 21, 2021, StoneX applied to join the involuntary bankruptcy petition in Bulgaria filed by a creditor of Agro. Id. ¶¶ 8, 17, 34.  The Bulgarian Court granted StoneX's petition on March 11, 2022, thereby commencing the Bulgarian Bankruptcy Proceeding.  Id. ¶¶ 17, 35.

### B.    Agro's Operations and Capital Structure

3.      Agro is a limited liability company formed under the laws of Bulgaria on August 9, 2006 and holding a registered address in the municipality of Stara Zagora, Bulgaria.  Id. ¶ 7 Currently, Agro has twelve registered shareholders and total registered capital of 7,005,000

---

[2] Agro is not currently engaged in any other litigation in the United States.

Bulgarian Levs (approximately $3,832,000). <u>Id</u>. ¶ 9. No single shareholder controls Agro. <u>Id</u>. Under the Bulgarian Commercial Code, the shareholders, acting through a "general assembly," appoint – and can remove – a manager or mangers, who hold exclusive executive authority in the company. <u>Id</u>. ¶ 7. Unless otherwise committed by operation of law, any executive and managerial power exercised by anyone else must by expressly granted by the manager or managers. <u>Id</u>.

4.      Agro leased land in Bulgaria – primarily in the northern Danube plain – to farm wheat, sunflowers, corn and other crops for sale in Bulgaria for the European market. <u>Id</u>. ¶ 11. As a Bulgarian commercial farming operation, Agro received European Union ("<u>EU</u>") agricultural subsidies designated for Bulgarian producers. <u>Id</u>. For its farming and administrative operations, Agro employed Bulgarians in Bulgaria, under Bulgarian labor contracts, subject to the employment and labor laws of Bulgaria. <u>Id</u>. Agro's managers have always been Bulgarians, who have lived and worked exclusively in Bulgaria. <u>Id</u>. All of Agro's commercial contracts – apart from its agreement with StoneX – were entered into in Bulgaria under Bulgarian law. <u>Id</u>. Finally, all of Agro's banking activity has been exclusively conducted within Bulgaria using bank accounts at banks licensed and located in Bulgaria. <u>Id</u>.

5.      As noted above, Agro's farming operations came to an end when StoneX froze Agro's two primary bank accounts. Since September 2021, Agro's only officer or employee has been a single manager.[3]

---

[3] In January and May 2022, respectively, Bulgarian appellate courts dissolved as improper the two pre-judgment attachments to the extent they freed the EU funds and raising the possibility of continued agricultural operations. <u>See</u> Foreign Rep. Decl ¶ 15 n.2.

**C.**     **Events Precipitating Commencement of the Bulgarian Bankruptcy Proceeding**

6.     In the Fall of 2017, Agro opened a commodities futures and options contract trading account with StoneX.  Id. ¶ 12.  Its goal was to hedge Agro's exposure to price declines in the crops that it grew and held as inventory.  From late 2017 through August 2018, Agro traded agricultural commodities futures and options contracts with Agro on margin – meaning that StoneX extended credit to Agro to purchase the contracts.  Id.  Contrary to the terms of the parties' agreement, most of Agro's trades in the Summer of 2018 were not hedges, but instead increased Agro's exposure to price declines in the crops it grew.  Id.  Not only were the positions created by these trades "long," rather than "short," in the underlying crops, but they were massively outsized relative the scale of Agro's production.  Id.  The trades were directed by one of Agro's managers at the time, Stanislav Georgiev, who – encouraged by the relationship broker at StoneX – had gone rouge.[4]  Id.

7.     Agro sustained heavy losses on these trades throughout the summer of 2018, and made over $1.5 million in margin payments.  Id. ¶ 13.  In late August 2018, StoneX presented Agro with a margin call of $2.2. million.  Id.  Over the next several days, Agro made two additional margin payments totaling over $825,000, but then determined that it was not liable for the losses on its trading account and refused to make any further payments.  Id.

8.     In response, StoneX liquidated Agro's open positions, setoff the proceeds from the liquidation against the outstanding margin call, and eventually initiated the New York Litigation to recover what it claims is a net settlement amount of slightly over $1.3 million, plus interest, attorneys' fees and costs.  See Compl. (Dkt. No. 1), INTL FCStone Markets LLC v. Agro Santino OOD, No. 20-CV-2658 (S.D.N.Y. Mar. 30, 2020).

---

[4] Georgiev died in 2020 while under criminal investigation related to his rouge trading.  See Foreign Rep. Decl. ¶ 12.

9.      Agro responded by filing a counterclaim, subsequently amended, seeking to recover the proceeds from the liquidated positions and the entirety of its net trading losses with StoneX (which exceed $1.5 million), plus interest, attorneys' fees and costs.  See Am. Answer & Counterclaims (Dkt. No. 31), INTL FCStone Markets LLC v. Agro Santino OOD, No. 20-CV-2658 (S.D.N.Y. Dec. 18, 2020).

10.     Agro was not served until September 2020, but from that point on the parties litigated aggressively.  In June 2021, Judge Furman denied FCStone's motion for pre-discovery summary judgment, and from November 2021 through Mid-April 2022, the parties engaged in expansive and sometimes contentious discovery.

11.     Meanwhile, StoneX decided to push Agro into Bankruptcy in Bulgaria.   On September 21, 2021, StoneX filed a petition with Bulgarian Court to join a petition filed several months earlier by one of Agro's creditors, Malina EOOD, to force Agro into bankruptcy.  Id. ¶¶ 8, 17, 34.  StoneX claimed to also be a creditor, and relied on the same claim it is pursuing in the New York Litigation as evidence.  Id.  Agro objected to the petition on the grounds that it is not liable to StoneX for breach of contract – i.e., the same merits-based defense that it has pursued in the New York Litigation. Id. ¶ 17.

**D.      Agro's Bulgarian Bankruptcy Proceeding**

12.     On March 11, 2022, the Bulgarian Court granted StoneX's and Malina EOOD's petitions. Id. ¶ 35.  It did not acknowledge Agro's objection, instead erroneously stating that Agro "has not disputed that the amounts are due." Ex. C to Foreign Rep. Decl. ¶ 6.  Through its March 11 decision, the Bulgarian Court formally commenced the Bulgarian Bankruptcy Proceeding and established StoneX as a creditor and party to the case.  Foreign Rep. Decl. ¶ 35.  It did not, however,

rule on the allowability of StoneX's claim, id. ¶¶ 22, 28, a process that comes later in the proceeding.

13.    As part of its order opening the Bulgarian Bankruptcy Proceeding, the Bulgarian Court also appointed a temporary trustee.  Id. ¶ 37.  The trustee assembled what is known as a "first creditors list" based on her review of Agro's books and records, id. ¶ 40, and then convened a statutorily required first meeting for those creditors on April 12, 2022, id.  The primary purpose of such a meeting under Bulgarian Bankruptcy Law is for creditors identified by the trustee to hear a report on the trustee's review of the debtor's books and records and to allow eligible creditors to vote (pro-rata in proportion to the size of their apparent claims) to appoint a permanent trustee and form a creditors' committee, if the creditors so desire.  Id. ¶ 26.  In preparation for the first creditors' meeting, the trustee may designate creditors as "related parties" to the debtor.  Id.  Such related parties are not allowed to vote on matters decided at the first creditors' meeting.  Id.  In this case, the trustee designated the majority of Agro's creditors as related parties.  Id. ¶ 40.  Indeed, the trustee designated all of the creditors identified on the first creditors list, except for StoneX and Malina (the two creditor parties to the proceeding), as related parties.  Id.  StoneX's putative claim is four times the size of Malina's and so StoneX wielded 80% of the voting power at the first creditors' meeting.  Id.  StoneX used its control of the meeting to appoint the trustee to serve as a permanent trustee.  Id.

14.    In a parallel to the trustee-appointment process, any party – irrespective of whether it appeared on the first creditors' list – was free to file a written claim against Agro in the month following the commencement of the Bulgarian Bankruptcy Proceeding.  Id. ¶ 28. Four putative creditors did so, and Agro is faced with several small claims for administrative expenses as well. Id. ¶ 41.  Pursuant to Bulgarian Bankruptcy Law the trustee – now permanent – reviewed the

submitted claims and, on May 3, 2022, submitted recommendations to Bulgarian Court about whether each claim should be allowed.  Id.  The trustee recommended that StoneX and Malina's claims be allowed, and recommended that all other claims of significant size be disallowed.  Id.  The court accepted the trustee's recommendations on May 5, 2022, subject to Agro's and other parties' right to file objections.  Id.  Between May 16 and May 18, 2022, Agro and all claimants whose claims were disallowed filed objections with the Bulgarian Court.  Id. ¶ 42.  The Bulgarian Court held a hearing on May 20, 2022 on the objections, and on June 1, 2022, the trustee made a written submission principally in support of the Court's acceptance of her recommendations.  Id.  The Bulgarian Court has yet to rule on the objections to its tentative ruling on the allowance of claims.  Id.  If Agro's objection to the allowance of StoneX's claim is overruled, Agro would most likely appeal that decision to another judge on the same court.  Id.

15.    Although Agro is the debtor in the Bulgarian Bankruptcy Law, under Bulgarian Bankruptcy Law, it remains in control of its own day-to-day affairs, including those related to the Bulgarian Bankruptcy Proceeding, id. ¶¶ 33, 36, 46, much like a debtor-in-possession in U.S. chapter 11 proceedings under the Bankruptcy Code.  This is because the Bulgarian Bankruptcy Proceeding has not yet reached the stage in which the Bulgarian Court determines whether Agro can be reorganized – a result that can be as simple as rescheduling or deferring payments, see id. ¶ 31. – or whether it must be liquidated, id. ¶¶ 32-33, 46.

16.    On May 31, 2022, in an exercise of her continued executive authority over the company's affairs, Agro's manager executed a power of attorney (the "Power of Attorney") appointing the Foreign Representative: (i) to act as Agro's the foreign representative of the Bulgarian Bankruptcy Proceeding for Agro for purposes of this Chapter 15 Case and (ii) authorizing her to commence this Chapter 15 Case.  A true and correct copy, including an English

translation, of the Power of Attorney appointing the Foreign Representative is attached to the Foreign Representative Declaration as <u>Exhibit B</u>, as is a true and correct copy, including an English translation, of a letter from the Trustee, acknowledging Management's authority to appoint the Foreign Representative.  <u>See</u> Ex E to Foreign Representative Declaration.

**E.**    **<u>The New York Litigation After Commencement of the Bulgarian Bankruptcy Proceeding</u>**

17.    After the Bulgarian Court opened the Bulgarian Bankruptcy Proceeding on March 11, 2022, Agro and StoneX continued with discovery through the New York Litigation.  The parties took seven depositions between March 29, 2022 and April 15, 2022.  <u>See</u> Joint Ltr. to the Hon. Jesse M. Furman (the "<u>Joint Ltr.</u>") (Dkt. No. 79), at 1, <u>INTL FCStone Markets, LLC v. Agro Santino OOD</u>, 20-CV-2658 (S.D.N.Y. Apr. 21, 2022).  Agro believed that the pendency of its counterclaim in the New York Litigation – which it has not yet been filed in Bulgaria – along with the relative expense of the continued litigation in New York could push the parties to settle on terms favorable to Agro and its (uncontested) creditors.  <u>See</u> Foreign Rep. Decl. ¶ 44.  On March 30, April 6, and April 7, 2022 in the midst of depositions, the parties engaged in settlement discussions.  <u>See</u> Joint Ltr., at 1.  They then participated in a court-ordered settlement conference before Magistrate Judge Netburn on May 10, 2022.  <u>See</u> Minute Entry, <u>INTL FCStone Markets, LLC v. Agro Santino OOD</u>, 20-CV-2658 (S.D.N.Y. May 10, 2022).  Judge Netburn provided the parties several additional days following the conference to consider a court-proposed settlement arrangement.  <u>See</u> Foreign Rep. Decl. ¶44.  On Friday, May 13, 2022, the parties' deadline to agree on the court-proposed settlement passed, effectively ending settlement discussions.  <u>Id.</u> ¶ 44.

18.    The following Tuesday, May 17, 2022, Agro decided open a chapter 15 case to seek recognition of the Bulgarian Bankruptcy Proceeding.  <u>Id.</u> ¶ 45.  It's U.S. counsel notified StoneX's

counsel the same day. See Ex. A to Ltr. Mot. for Stay ("Mot. for Stay") (Dkt. No. 85), INTL

FCStone Markets, LLC v. Agro Santino OOD, 20-CV-2658 (S.D.N.Y. May 20, 2022). Agro

requested that StoneX join it in requesting a stay of the New York Litigation, but StoneX refused.

See id. Agro then filed a motion with Judge Furman to stay the New York Litigation, see Mot. for

Stay, which StoneX opposed, see Ltr. Response (Dkt. No. 87), INTL FCStone Markets, LLC v.

Agro Santino OOD, 20-CV-2658 (S.D.N.Y. May 26, 2022).

19.    In its opposition, StoneX argued that it would be prejudiced if it had to pursue its

claim exclusively in the Bulgarian Bankruptcy. See id. at 2. It failed to disclose its central role in

commencing the Bulgarian Bankruptcy Proceeding, or the fact that its claim – though subject to

an objection – has been *allowed* by the Bulgarian Court. StoneX also misrepresented Agro's

defense against its claim in the Bulgarian Court as based on the pendency of the New York

Litigation, see id., when, in fact, Agro has contested StoneX's claim in both fora on the merits, see

Foreign Rep. Decl. ¶ 17, and, indeed, recently filed notice with the Bulgarian Court of its intent to

halt the New York Litigation through this Chapter 15 case. See Ex. F to Foreign Rep. Decl.

20.    On May 31, 2022, Judge Furman denied Agro's motion for the stay, see Order (Dkt.

No. 89), INTL FCStone Markets, LLC v. Agro Santino OOD, 20-CV-2658 (S.D.N.Y. May 31,

2022), and on June 2, 2022, StoneX filed the StoneX Motions. See Mot. for Summary J. (Dkt. No.

92), INTL FCStone Markets, LLC v. Agro Santino OOD, 20-CV-2658 (S.D.N.Y. June 2, 2022).

Pursuant to court-ordered briefing schedule, Agro must respond to the StoneX Motions by June

23, 2022. See Order, INTL FCStone Markets, LLC v. Agro Santino OOD, 20-CV-2658 (S.D.N.Y.

Apr. 26, 2022). Any reply in support of the StoneX motions must be filed by June 30.

F.    **Connections to the United States and this District**

21.    Agro has property in the United States.  It has a claim in the New York Litigation for over $1 million.  Additionally, Scoolidge Peters Russotti & Fox LLP holds certain unused retainers from Agro in a bank account in New York, New York in connection with certain legal services retained in respect of this Chapter 15 case.  Lastly, Agro is also a defendant in the New York Litigation.

## JURISDICTION AND VENUE

22.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. § 1501, as well as the Amended Standing Order of Reference dated January 31, 2012, Reference M-431, In re Standing Order of Reference Re: Title 11, 12 Misc. 00032 (S.D.N.Y. Feb. 2, 2012) (Preska, C.J.) (the "Amended Standing Order").

23.    This Chapter 15 Case has been properly commenced in accordance with sections 1504 and 1509(a) of the Bankruptcy Code by the filing of the Verified Petition.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

24.    Venue is proper in this District pursuant to 28 U.S.C. § 1410(1), as Agro has all of its U.S. assets located within New York County, and thus within this District, in the form of its claim retainer accounts held by Scoolidge Peters Russotti & Fox LLP.  In addition, Agro has a claim and is a defendant in the New York Litigation, which is pending in this District.

## REQUIRED DISCLOSURES

25.    The Petitioner hereby provides the following disclosures in accordance with Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"):

- the following disclosure identifies for the Court any corporation, other than a governmental unit, that directly or indirectly owns 10% or more of any class of each of the Agro' equity interests:

    a.   Vetz Hubavene Corp, a Bulgarian corporation      12.85%

    b.   Skylark Capital Ltd, a United Kingdom limited company    11.90%

    c.   EMA Capital Ltd., a Bulgarian limited company      11.05%

    d.   Alexandra Foundation, a Bulgarian private charitable foundation  20.00%

    e.   Assets Management Ltd, a Bulgarian limited company    17.00%

    f.   Aneta Dimitrova, an individual      11.05%

    g.   Spas Shopov, an individual    17.00%

- Other than the Verified Petition, the *Motion for Provisional Relief Pending Recognition of a Foreign Main Proceeding Pursuant to 11 U.S.C. §§ 1519, 105(a) and 362*, and related procedural motions, Agro does not have a pending petition with this Court for relief under any chapter of the Bankruptcy Code.

- The Bulgarian Bankruptcy Proceeding is the only foreign proceeding, as that term is defined in section 101(23) of the Bankruptcy Code, of Agro currently open at the time of commencement of this Chapter 15 Case.

- Aside from the Petitioner, Petitioner's co-counsel in the Bulgarian Bankruptcy Proceeding, and, with respect to new business dealings, the trustee, no other persons are currently authorized to administer foreign proceedings of Agro at this time. The Petitioner is the *only* person who has been authorized to commence and control this Chapter 15 Case.

- The only party to a litigation pending against Agro in the United States StoneX.

- Agro is seeking provisional relief under Section 1519 of the Code against StoneX.

Further disclosures required pursuant to Rule 1007(a)(4), relating to the names and addresses of certain persons disclosed above, are in included the Petitioner's *Lists and Statements Filed Pursuant to Bankruptcy Rule 1007(a)(4)* filed concurrently herewith.

## **RELIEF REQUESTED**

26.     By this Petition, the Petitioner, on behalf of Agro, seeks entry of the Proposed Order, in the form attached hereto as <u>Exhibit A</u>, (i) granting the Petition for Recognition in this

Chapter 15 Case and recognizing the Bulgarian Bankruptcy Proceeding as a foreign main proceeding for Agro pursuant to section 1517 of the Bankruptcy Code; (ii) recognizing that the Petitioner is the duly appointed foreign representative of Agro within the meaning of section 101(24) of the Bankruptcy Code and is authorized to act on behalf of Agro in this Chapter 15 Case; (iii) granting Agro and each of its respective successors, agents, representatives, advisors and counsel the protections contained in sections 306 and 1510 of the Bankruptcy Code; and (iv) granting such other and further relief as the Court deems just and proper.

## BASIS FOR RELIEF REQUESTED

27.     Chapter 15 of the Bankruptcy Code was specifically designed to assist foreign representatives such as Petitioner in the performance of her duties in facilitating the liquidation of a foreign enterprise such as Agro. The purpose of chapter 15 is to incorporate the Model Law on Cross-Border Insolvency (1997) (the "Model Law") to provide effective mechanisms to handle cross-border insolvencies. See 11 U.S.C. § 1501(a). Here, each of the procedural requirements of section 1515 of the Bankruptcy Code are satisfied, as is set out in section A below. Notably, the Petitioner is the duly appointed "foreign representative" of the Bulgarian Bankruptcy Proceeding with respect to Agro, and the Bulgarian Bankruptcy Proceeding easily qualifies as a "foreign proceeding" for the purposes of chapter 15. The center of main interest for Agro is Bulgaria. Bulgaria is presumed to be the center of main interests for Agro given that Bulgaria is the jurisdiction of organization for Agro. See 11 U.S.C. § 1516(c). Further, from a pragmatic perspective, Bulgaria is the sole jurisdiction in which Agro's assets can be efficiently liquidated given that all of the Agro's operations have taken place, and assets (other than the U.S. assets relating to the New York Litigation) are and remain, in Bulgaria.

**A. The Bulgarian Bankruptcy Proceeding is a Foreign Proceeding of Agro and the**

**Petitioner is the Duly-Authorized Foreign Representative thereof and has Properly
Petitioned This Court for Recognition**

28.     Section 1517(a) of the Bankruptcy Code provides that, after notice and a hearing,
the Court shall enter an order recognizing a foreign proceeding if (i) the petition meets the
requirements of section 1515 of the Bankruptcy Code, (ii) the foreign representative applying for
recognition is a person or body, and (iii) such foreign proceeding is a foreign main proceeding or
non-main proceeding within the meaning of section 1502 of the Bankruptcy Code.  See 11 U.S.C.
§ 1517(a); In re Inversora Eléctrica de Buenos Aires S.A., 560 B.R. 650, 653 (Bankr. S.D.N.Y.
2016).   These foregoing requirements are satisfied with respect to the Bulgarian Bankruptcy
Proceeding, the Petitioner, and the Verified Petition with respect to Agro.

*i.     The Verified Petition satisfies the requirements of section 1515*

29.     Each of the procedural requirements of section 1515 of the Bankruptcy Code are
satisfied.  First, the Petitioner properly commenced this Chapter 15 Case with respect to Agro in
accordance with sections 1504 and 1509(a) by filing the Verified Petition under section 1515.  See
In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd., 374 B.R. 122, 127
(Bankr. S.D.N.Y. 2007) (hereinafter "Bear Stearns I"), aff'd, 389 B.R. 325 (S.D.N.Y. 2008)
(hereinafter "Bear Stearns II").   Second, the Petitioner has submitted all documents and other
information required by section 1515(b) regarding the Bulgarian Bankruptcy Proceeding and the
appointment of the Petitioner as foreign representative thereof with respect to Agro for purposes of
this Chapter 15 Case, together with English translations of the same, as required by section
1515(d).[5]  Finally, the Petitioner has submitted in this Verified Petition all information required by

---

[5]     The Power of Attorney appointing the Petitioner as foreign representative is attached as
Exhibit B to the Foreign Representative Declaration.  The decision of the Bulgarian Court granting

section 1515(c) (*i.e.*, a statement by the Petitioner identifying any other foreign proceedings known

to the Petitioner with respect to Agro),[6] together with all other required disclosures regarding each

of the Debtors in accordance with Bankruptcy Rules 1007(a)(4) and 7007.1.  See supra ¶ 25.

> ii.  *The Petitioner is the duly-appointed "foreign representative" of the Bulgarian*
> *Bankruptcy Proceeding for Agro.*

30.     Section 1517(a) of the Bankruptcy Code also requires that a foreign representative

applying for recognition be a person or body.  See 11 U.S.C. § 1517(a)(2).  Here, the Petitioner is

an individual, which is included in the term "person," 11 U.S.C. § 101(41), who, with respect to

Agro has been duly (i) appointed to act as the foreign representative of the Bulgarian Bankruptcy

Proceeding for purposes of this Chapter 15 Case and (ii) authorized to commence this Chapter 15

Case with respect to Agro.  As explained above, Bulgarian Bankruptcy Law authorizes Agro control

of its own day-to-day affairs, including those related to the Bulgarian Bankruptcy during the initial

phase of the case.  See supra. ¶ 15.  During this phase of the case – the time up to and until the

Bulgarian Court determines whether Agro can be reorganized – Agro controls its own affairs in

much the same way a debtor-in-possession does under chapter 11 of the Bankruptcy Code.  Id.

31.     On May 31, 2022, in an exercise of her continued executive authority over the

company's affairs, Agro's manager executed a power of attorney appointing the Petitioner in

conjunction with the Bulgarian Bankruptcy Proceeding as Agro's foreign representative, and thus

sections 101(24) and 1517(a)(2) of the Bankruptcy Code are satisfied.  See In re Serviços de

Petróleo Constellation S.A., 600 B.R. 237, 270 (Bankr. S.D.N.Y. 2019) (finding a foreign

---

StoneX's petition and opening the Bulgarian Bankruptcy Proceeding is attached as Exhibit C to the
Foreign Representative Declaration.

[6]     There are no such other foreign proceedings.

representative appointed pursuant to resolution of the debtors' boards is a proper "foreign representative" within the meaning of section 101(24) and thus meets 1517(a)(2)'s requirements); In re OAS S.A., 533 B.R. 83, 93-95 (Bankr. S.D.N.Y 2015) (holding that the Bankruptcy Code does not require the judicial authorization or appointment of the foreign representative); In re Vitro, S.A.B. de C.V., 470 B.R. 408 (Bankr. N.D. Tex. 2012), aff'd, 701 F.3d 1031 (5th Cir. 2012) (holding that an individual appointed as foreign representative by the debtor's board in anticipation of a Mexican *concurso* proceeding, which contemplates self-management by the debtor during the proceeding similar to that of a debtor-in-possession, fit within the scope of the Bankruptcy Code's definition of "foreign representative," and recognizing the individual as the foreign representative).

### iii. The Bulgarian Bankruptcy Proceeding is a foreign proceeding

32.     The Bulgarian Bankruptcy Proceeding is a "foreign proceeding" with respect to Agro, as required under section 1517(a).  See 11 U.S.C. § 1517(a)(1) (requiring as a condition to the entry of a recognition order, the Bulgarian Bankruptcy Proceeding must be a foreign main proceeding or nonmain proceeding within the meaning of section 1502 of the Bankruptcy Code).  A "foreign proceeding" is (1) a collective judicial or administrative proceeding under a law relating to insolvency or adjustment of debt, (2) pending in a foreign country, (3) in which the assets and affairs of the debtor are subject to control or supervision of a foreign court, and (4) for the purpose of reorganization or liquidation.  See 11 U.S.C. § 101(23).  The Bankruptcy Code defines "foreign court" as "a judicial or other authority competent to control or supervise a foreign proceeding."  11 U.S.C. § 1502(3).  The Bulgarian Bankruptcy Proceeding meets this definition.

33.     First, as discussed in the Foreign Representative Declaration, the Bulgarian Bankruptcy Law establishes a framework comparable to chapter 11 of the Bankruptcy Code for controlled, court-supervised and collective reorganization and restructuring of obligations of

distressed companies.  See Foreign Decl. ¶¶ 18-33.  It establishes a process to identify and organize

creditors, see id. at ¶¶ 25-28, evaluate claims, see id. at ¶¶ 26-30, and provides for the proposal and

approval of plans of reorganization, see id. at ¶ 31.  Like chapter 11, Bulgarian Bankruptcy Law

leaves the debtor with significant managerial control over its affairs while reorganization remains

a possibility.  See id. at ¶ 33.  And, like chapter 11, Bulgarian Bankruptcy Law provides a process

for the liquidation of the debtor's assets if reorganization is not feasible.  See id. at ¶ 32.

34.     The Bulgarian Bankruptcy Proceeding is a "collective" proceeding in that it

involves the treatment of multiple creditors and claims together rather than attempting to resolve

two-party disputes.  See id. ¶¶ 25-32.  A bankruptcy proceeding in Bulgaria is intended to directly

or indirectly benefit all creditors collectively, who, subject to judicial supervision, have the power

to appoint the trustee and propose and approve plans of reorganization.  Id. ¶¶ 26-27, 31.  The

importance of the collective nature of a Bulgarian bankruptcy proceeding is manifest by the

automatic stay of litigation against the debtor that adheres once a proceeding is commenced.  See

id. at ¶¶ 25, 38.  Indeed, all claims against the debtor by any putative creditors are expressly

centralized for resolution before the Bulgarian court presiding over the proceeding.  see id. ¶¶ 25,

38, 53.

35.     The Bulgarian Bankruptcy Proceeding is a proceeding pending in Bulgaria, a foreign

country, where the assets and affairs of the Agro are subject to the control and supervision by the

Bulgarian Court for purpose of reorganization or liquidation.  See id. ¶ 19.  Proceedings in nearby

countries with similar procedures as a Bulgarian bankruptcy proceeding have been held to constitute

foreign proceedings.  See Order (Dkt No. 9), In re Železara Smederevo DOO, No. 19-BK-12129

(Bankr. S.D.N.Y. Sept. 4, 2019) (finding that Serbian bankruptcy proceeding under the Serbian

commercial code constituted a "foreign proceeding").  The same conclusion applies here.

**B.** **The Court Should Find that the Bulgarian Bankruptcy Proceeding Is a "Foreign Main Proceeding" with Respect to Agro**

36.    The Bulgarian Bankruptcy Proceeding is the "foreign main proceeding" of Agro because it is pending in Bulgaria, which is Agro's center of main interests ("COMI"). See 11 U.S.C. § 1502(4); 11 U.S.C. § 1517(b)(1) (a foreign main proceeding is the foreign proceeding subject to the petition "pending in the country where the debtor has the center of its main interests").

*i.    A COMI analysis under U.S. law focuses on where a debtor's business interests are principally centered*

37.    Neither the Bankruptcy Code nor the Model Law defines COMI. However, absent evidence to the contrary, a debtor's registered office is presumed to be its COMI. See 11 U.S.C. § 1516(c); see also Bear Stearns I, 374 B.R. at 130. Agro is organized under the laws of, and maintains its registered offices in, Bulgaria, see Foreign Rep. Decl. ¶ 7, creating a presumption that Bulgaria is the COMI for Agro. Although this presumption is rebuttable, Serviços de Petróleo Constellation, 600 B.R. at 272 ("the COMI presumption is rebuttable where other factors suggest that the true COMI of a debtor lies elsewhere"), all relevant factors also point to Bulgaria as the COMI for Agro.

38.    A COMI analysis looks at the debtor's substantive "locus of operations"—the center of its operations, purpose, function, and activities, among others. See Phoenix Four, Inc. v. Strategic Res. Corp., 446 F. Supp. 2d 205, 214-15 (S.D.N.Y. 2006) (internal citations and quotations omitted). Some courts interpret COMI to mean "principal place of business" to guide their COMI analysis. See e.g., In re Millennium Glob. Emerging Credit Master Fund Ltd., 458 B.R. 63 (Bankr. S.D.N.Y. 2011). However, the Second Circuit has noted "[g]iven Congress's choice to use COMI instead of "principal place of business," that concept [of principal place of business] does not control the analysis. But to the extent that the concepts are similar, a court may certainly consider

a debtor's "nerve center," including from where the debtor's activities are directed and controlled."

See In re Fairfield Sentry Ltd., 714 F.3d 127, 138 n.10 (2d Cir. 2013) (citation omitted).

39.    Courts in this Circuit employ a list of factors adopted from In re SPhinX, Ltd., 351

B.R. 103, 117 (Bankr. S.D.N.Y. 2006) when determining a debtor's COMI where the "registered

office" presumption does not govern.  Here, these factors provide no support to rebut the "registered

office" presumption and support a finding that the COMI of Agro is Bulgaria.  These factors are

nonexclusive and are not to be applied mechanically.  Serviços de Petróleo Constellation, 600 B.R.

at 273.  They include:

> "[T]he location of the debtor's headquarters; the location of those
> who actually manage the debtor (which conceivably could be the
> headquarters of a holding company); the location of the majority
> of the debtor's creditors or a majority of the creditors who would
> be affected by the case; and/or the jurisdiction whose law would
> apply to most disputes." . . . [the] "principal place of business" . . .
> [and] the expectations of third parties [as to the] debtor's COMI."

In re Fairfield Sentry Ltd., 2011 U.S. Dist. LEXIS 105770 at *10 (S.D.N.Y. Sept. 16, 2011) (citing

Bear Stearns II, 389 B.R. at 336); In re SPhinX, 351 B.R. at117.  The Second Circuit added as

additional possible factors "the location of headquarters, decision-makers, assets, creditors, and the

law applicable to most disputes."  Fairfield Sentry, 714 F.3d at 130.  These factors, the Second

Circuit reasoned, are "in the public domain" and thus "ascertainable [and] not easily subject to

tactical removal."  Id. at 136-38 (noting the "importance of factors that indicate regularity and

ascertainability."); see also In re Brit. Am. Ins. Co. Ltd., 425 B.R. 884, 912 (Bankr. S.D. Fla. 2010)

(finding that the "location of a debtor's COMI should be readily ascertainable by third parties").

40.    While each of the Fairfield Sentry factors serves as a "helpful guide" in assessing

a debtor's COMI, no one factor is required or dispositive.  See Fairfield Sentry, 714 F.3d at 137

(noting that "[c]onsideration of these specific factors is neither required nor dispositive" and warning against a mechanical application of the factors). The factors should be applied in light of pragmatic considerations for the "maximization of the debtor's value" and "the reasonable interests of parties in interest," as well as creditors' support for or acquiescence to a proposed COMI "[b]ecause their money is ultimately at stake." SPhinX, 351 B.R. at 117.

> ii. *Agro has its COMI in Bulgaria*

41.    All of the operations of Agro were performed in Bulgaria, managed and directed from Bulgaria and performed primarily, if not exclusively, by Bulgarian-citizens. Bulgaria is the only jurisdiction that is easily "ascertainable by third parties" as the COMI for Agro. Agro is organized and under centralized management in Bulgaria. As such, the "nerve center" of their businesses is, and has always been, located in Bulgaria.

42.    For instance, nearly 90% of Agro's equity is owned by Bulgarian individuals or entities, see Lists and Statements Filed Pursuant to Bankruptcy Rule 1007(a)(4), and, as discussed above, Agro has always been managed by Bulgarians who live and work in Bulgaria. In terms of operations, Agro grew its crops on land leased in Bulgaria – primarily the northern Danube plain – it received European Union ("EU") agricultural subsidies designated for Bulgarian producers.; its employees have been nearly all Bulgarians, working in Bulgaria, under Bulgarian labor contracts, subject to the employment and labor laws of Bulgaria; all of Agro's commercial contracts – apart from its agreement with StoneX – were entered into in Bulgaria under Bulgarian law; and all of Agro's banking activity has been exclusively conducted within Bulgaria using bank accounts at banks licensed and located in Bulgaria.

43.    Four claimants filed claims in the Bulgarian Bankruptcy Proceeding. All except for StoneX are Bulgarian entities or individuals. See Foreign Rep. Decl. ¶ 41.

44.     In light of Agro's nearly exclusively Bulgarian ownership, management, operations, and debts, there is no basis to overcome the presumption that Bulgaria is the COMI for Agro.

**C.  Application of the Automatic Stay to the New York Litigation Will Provide Comity to the Bulgarian Bankruptcy Proceeding and Conserve Resources**

45.     Pursuant to section 1520(a)(1) of the Bankruptcy Code, the automatic stay in section 362 of the Bankruptcy Code automatically applies upon the recognition of a foreign main proceeding. By its terms, the section-362 would immediately stay the New York Litigation, and so – since the Bulgarian Bankruptcy Proceeding clearly qualifies as a foreign main proceeding and all other criteria for its recognition are met – the New York Litigation will be automatically stayed when the Court grants this Petition.

46.     That said, it bears mention that this consequence of recognition is particularly appropriate in light of the aims of Chapter 15. One of the central purposes of Chapter 15 of the Bankruptcy Code is to promote cooperation between the U.S. courts and the courts of foreign countries supervising bankruptcy proceedings. See 11 U.S.C. § 1501(a)(1). Indeed, through the enactment of Chapter 15, Congress is widely viewed to have displaced traditional means for debtors and their representatives to seek comity of foreign bankruptcy decisions. See, e.g., HFOTCO LLC v. Zenia Special Mar. Enter., No. 19-CV-3595, 2021 WL 2834687, *3 (S.D. Tex. July 7, 2021) ("No other mechanism," apart from Chapter 15, for U.S. courts to afford comity to foreign insolvency proceedings). Another important objective of Chapter 15 is the "*efficient* administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor." 11 U.S.C. § 1501(a)(3) (emphasis added).

47.     Here, the Bulgarian Court's required effort to consolidate all claims against Agro is entitled to comity. As discussed above, a core principle of Bulgarian Bankruptcy Law is that all

claims against the debtor be centralized in a single proceeding.  This is why an automatic stay of all litigation against the debtor applies under Bulgarian Bankruptcy Law once a bankruptcy proceeding is commenced.  By continuing to prosecute the New York Litigation, StoneX flouts the Bulgarian Court's automatic stay and undermines Bulgarian Bankruptcy Law's intent that all claims against a debtor be heard and decided in single proceeding.  This subversion of Bulgarian law is only made worse by the fact that StoneX *itself* played a central role commencing the Bulgarian Bankruptcy Proceeding.

48.     Secondly, StoneX's insistence in litigating the same claim in two fora simultaneously, is hugely wasteful.  While StoneX may find value in the redundancy of the parallel litigation – perhaps, ironically, viewing the New York Litigation as a "hedge" against an adverse ruling in Bulgaria – Agro is struggling under the burden of transatlantic litigation.  Moreover, StoneX's continuation of the New York Litigation into dispositive motion practice, and possibly to trial, is needlessly taxing judicial resources.  From a global efficiency perspective, it makes no sense for StoneX to pursue the same claim in two courts – and less still where, as here, one of those courts' laws forbid it.

49.     For these reasons, the application of the automatic stay upon recognition pursuant to section 1520(a)(1) is especially appropriate in this case.

## NOTICE

50.     Notice of the Verified Petition has been provided to the parties (the "Notice Parties") set forth in Exhibit B annexed hereto (the "Notice List").  The Petitioner has filed an *Application Pursuant to Federal Rules of Bankruptcy Procedure 2002 and 9007 for an Order Scheduling Hearing and Specifying Form and Manner of Service of Notice, and Granting Related Relief*

concurrently with this Verified Petition and will provide such other or further notice as the Court directs in accordance with the order entered on that motion.

## NO PRIOR REQUEST

51.    No previous request for the relief requested herein has been made to this or any other court.

## CONCLUSION

52.    WHEREFORE, the Petitioner respectfully requests that the Court: (i) grant the Verified Petition and enter the Proposed Order annexed hereto as Exhibit A recognizing the Bulgarian Bankruptcy Proceeding as the foreign main proceeding for Agro and granting the requested relief in connection therewith; and (ii) grant such other and further relief as the Court deems just and proper.

Dated: June 14, 2022
      New York, New York

                             SCOOLIDGE PETERS RUSSOTTI & FOX LLP

                             By: /s/ Peter Fox
                               Peter Fox

                             Peter Fox, Esq.
                             SCOOLIDGE PETERS RUSSOTTI & FOX LLP
                             2 Park Avenue, 20th Floor
                             New York, New York 10016
                             T: 212-729-7708
                             (pfox@sprfllp.com)

                             *Attorneys for the Foreign Representative of Agro*
                             *Santino OOD*

## **VERIFICATION OF CHAPTER 15 PETITION**

Pursuant to 28 U.S.C. § 1746, I, Yordanka Ivanova Panchovska, declare under penalty of perjury under the laws of the United States of America as follows:

I am the authorized foreign representative of Agro with respect to the Bulgarian Bankruptcy Proceeding for purposes of this Chapter 15 Case.  I declare under penalty of perjury that the factual contents of the foregoing Verified Petition as well as the factual contents of each of the attachments and appendices thereto, are true and accurate to the best of my knowledge, information and belief, and I respectfully represent as follows:

- I am an attorney licensed, and in good standing, to practice in Bulgaria;

- My law office has been retained by Agro to represent it as co-counsel in its Bulgarian Bankruptcy Proceeding, and, on May 31, 2022, I have been appointed to serve as Agro's "foreign representative."  Accordingly, I am fully authorized and take related action as the Foreign Representative.

Unless otherwise indicated, all facts set forth in this Verified Petition are based upon: (i) based on my personal knowledge, and are known to me to be true and accurate; or (ii) if not within my personal knowledge, are derived from either (x) Agro's records and court filings that I have reviewed in my capacity Agro's bankruptcy counsel and foreign representative, or (y) Agro's U.S. counsel with respect to matters concerning the United States, and, in both cases, are true to the best of my knowledge, information and belief.

My native language is Bulgarian but I read, write and speak English and I have elected to submit this declaration in English.  I am an individual over the age of 18.  If I am called to testify, I will do so competently and based on the facts set forth herein.

*[Remainder of Page Left Intentionally Blank; Signature Page to Follow]*

Dated: June 14, 2022

Respectfully Submitted,

_____

Yordanka Ivanova Panchovska, Esq.
Counsel to and Authorized Foreign
Representative of the Debtors