**UNITED STATES BANKRUPTCY COURT**                    **FOR PUBLICATION**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

In re:                                    :    Chapter 15
                                          :
Agro Santino, OOD,                        :    Case No. 22-10756 (JLG)
                                          :
    *Debtor in a foreign proceeding.*[1]   :

-------------------------------------------------------------x


### MEMORANDUM DECISION GRANTING CHAPTER 15 PETITION AND RECOGNITION OF THE FOREIGN BANKRUPTCY PROCEEDING


<u>**A P P E A R A N C E S :**</u>

**SCOOLIDGE PETERS RUSSOTTI & FOX LLP**
*Attorneys for the Foreign Representative of Agro Santino OOD*
2 Park Avenue, 20th Floor
New York, New York 10016
By:    Peter Fox

**DLA PIPER LLP (US)**
*Attorneys for Creditor StoneX*
1251 Avenue of the Americas
New York, New York 10020
By:    Jeffrey D. Rotenberg
       Marc A. Silverman

1201 North Market Street, Suite 2100
Wilmington, Delaware 19801
By:    R. Craig Martin

---

[1]    The Debtor's Bulgarian company identification number is 114673310. The Debtor's registered business address is Ul. Tsar Shishman 85b, Office 4, Stara Zagora 6000, Bulgaria.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## Introduction[2]

Agro Santino OOD ("Agro" or the "Debtor") is a limited liability company formed under the laws of the Republic of Bulgaria. It is the subject of a bankruptcy proceeding (the "Bulgarian Bankruptcy Proceeding") pending under relevant sections of the Bulgarian Commercial Act (the "BCA") relating to insolvency, bankruptcy and restructuring (the "Bulgarian Bankruptcy Law"), in the Stara Zagora District Court (the "Bulgarian District Court"), acting in its capacity as a bankruptcy court, in Stara Zagora, Bulgaria. That court appointed Ms. Elka Nedelcheva Petrova (the "Trustee") to serve as Agro's trustee in the Bulgarian Bankruptcy Proceeding. Ms. Yordanka Ivanova Panchovska is an attorney licensed, and in good standing, to practice law in Bulgaria. Agro maintains that, subsequent to the commencement of the Bulgarian Bankruptcy Proceeding and pursuant to a Power of Attorney issued to Ms. Panchovska by Agro's sole Manager, it appointed Ms. Panchovska to serve as its "foreign representative," as that term is defined in section 101(24) of title 11 of the United States Code (the "Bankruptcy Code") in this Chapter 15 Case.

The matter before the Court is Agro's *Verified Petition for Recognition of the Bulgarian Bankruptcy Proceeding and Motion for Order Granting Final Relief Pursuant to 11 U.S.C. §§ 105(a), 1509(b), 1515, 1517 and 1520(a)*, ECF No. 2 (the "Verified Petition," and, together with the *Official Form 401 Chapter 15 Petition for Recognition of a Foreign Proceeding*, ECF

---

[2]    Unless otherwise stated, capitalized terms shall have the meanings ascribed to them herein.

No. 1, filed on behalf of the Debtor contemporaneously therewith, the "Chapter 15 Petition").[3] Ms. Panchovska filed the Chapter 15 Petition in this Court, as Agro's putative "foreign representative." Pursuant to the petition, Agro seeks an order of the Court (i) granting recognition of the Bulgarian Bankruptcy Proceeding pursuant to section 1517 of the Bankruptcy Code as a "foreign main proceeding," and all relief included therewith as provided in section 1520 of the Bankruptcy Code; (ii) recognizing Ms. Panchovska as Agro's "foreign representative"; and (iii) granting such other and further relief as the Court deems just and proper. Verified Petition at 2; *see id.*, Ex. A. (the "Proposed Order").[4]

StoneX Markets LLC ("StoneX") is Agro's largest creditor. It intervened as a petitioner in the involuntary petition that commenced the Bulgarian Bankruptcy Proceeding. It is also the plaintiff in an action pending against Agro in the United States District Court for the Southern District of New York (the "New York Litigation").[5] In that action, StoneX is seeking damages from Agro totaling approximately $1.3 million plus interest and attorney's fees and costs. In its counterclaim against StoneX in that action, Agro seeks in excess of $1.5 million in damages.

---

[3]    References to "ECF No. __" are to documents filed on the electronic docket in this Chapter 15 case, No. 22-10756.

[4]    In support of the Chapter 15 Petition, the Agro petitioner has filed with this Court:

> (i)    *Declaration of Yordanka Ivanova Panchovska in Support of Motion for Provisional Relief Pending Recognition of a Foreign Main Proceeding Pursuant to 11 U.S.C. §§ 1519, 105(a) and 362, Verified Petition Under Chapter 15 for an Order Granting Recognition of the Bulgarian Bankruptcy Proceeding and Motion for Order Granting Relief Pursuant to 11 U.S.C. §§ 105(a), 1509(b), 1515, 1517, and 1520(a) and Related Procedural Motions*, ECF No. 3 (the "Panchovska Declaration" or "Panchovska Decl.").

> (ii)    *Statement of Foreign Representative in Support of Chapter 15 Petition for Recognition of Foreign Proceeding*, ECF No. 4 (the "Panchovska Statement").

> (iii)    *Lists and Statements Filed Pursuant to Bankruptcy Rule 1007(a)(4)*, ECF No. 5 (the "Rule 1007 Lists").

[5]    *See INTL FCStone Markets, LLC v. Agro Santino OOD*, No. 20-cv-2658 (S.D.N.Y. filed March 30, 2020). StoneX was formerly known as INTL FCStone Markets, LLC.

StoneX opposes the Verified Petition (the "Opposition" or "Opp.")[6] and contends that the Court should deny recognition of the Bulgarian Bankruptcy Proceeding because Agro has failed to carry its burden of demonstrating that Ms. Panchovska qualifies under Bulgarian law to serve as its "foreign representative" in this Chapter 15 Case.

In its Reply[7] to the Opposition, Agro maintains that it properly appointed Ms. Panchovska to serve as its "foreign representative" in this case. Agro contends that the Court should overrule the Opposition, recognize Ms. Panchovska as its "foreign representative" and the Bulgarian Bankruptcy Proceeding as a "foreign main proceeding," and grant the Chapter 15 Petition and the relief sought therein.

For the reasons set forth herein, the Court overrules the Opposition, and grants the Chapter 15 Petition and recognition of the Bulgarian Bankruptcy Proceeding.

### Jurisdiction

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

---

[6]   *Opposition to Agro Santino OOD's Verified Petition for Recognition of the Bulgarian Bankruptcy Proceeding and Motion for Order Granting Relief Pursuant to 11 U.S.C. §§ 105(a), 1509(b), 1515, 1517, and 1520(a)*, ECF No. 24. In support of its Opposition, StoneX filed two declarations:

    (i)   *Declaration of Jeffrey D. Rotenberg in Support of StoneX's Opposition to Agro's Verified Petition for Recognition of the Bulgarian Bankruptcy Proceeding*, ECF No. 25 (the "Second Rotenberg Decl.").

    (ii)   *Declaration of Iskra Neycheva in Support of StoneX's Opposition to Agro's Verified Petition for Recognition of the Bulgarian Bankruptcy Proceeding*, ECF No. 26 (the "Second Neycheva Decl.").

[7]   *Reply in Support of Verified Petition for Recognition of the Bulgarian Bankruptcy Proceeding and Motion for Order Granting Relief Pursuant to 11 U.S.C. §§ 105(a), 1509(b), 1515, 1517, and 1520(a)*, ECF No. 27. In support of the Reply, Agro filed the *Declaration of Yordanka Inanova Panchovska in Support of Reply in Support of Verified Petition for Recognition of the Bulgarian Bankruptcy Proceeding and Motion for Order Granting Relief Pursuant to 11 U.S.C. §§ 105(a), 1509(b), 1515, 1517, and 1520(a)*, ECF No. 28 (the "Second Panchovska Decl.").

## **Background**

Agro is a Bulgarian limited liability company formed under the Bulgarian Commercial Act. Panchovska Decl. ¶ 9.  Agro has twelve registered shareholders and is currently managed by a single Manager who is appointed and can be removed by the general assembly of shareholders. *Id.* ¶¶ 7, 9.  Under the Bulgarian Commercial Act, the Manager is the sole person holding executive or managerial authority over Agro, and all executive and managerial power held by other parties derives from a specific grant of such authority from the Manager.  *Id.* ¶ 7.  Agro is no longer an operating business.  For approximately 13 years, it operated as an agricultural producer, producing various agricultural products including wheat, sunflowers, corn and other crops.  *Id.* ¶¶ 8, 10.  Agro sold its product in Bulgaria for eventual distribution in European agricultural markets.  *Id.* ¶ 10.

In the autumn of 2017, Agro opened a commodities futures and options contract trading account with StoneX in order to hedge its exposure to price declines in the crops that it grew and held as inventory.  *Id.* ¶ 12.  In opening the account, Agro agreed to and executed StoneX's "Swap and Over-the-Counter Derivatives Account Application" and its accompanying Terms of Business (together, the "Agreement").  First Neycheva Decl. ¶ 6.[8]  From late 2017 through August 2018, Agro traded agricultural-commodities futures and options contracts on margin.  At the end of August 2018, Agro suffered substantial losses on its open positions.  Panchovska Decl. ¶ 13.  At that time, StoneX presented Agro with a margin call of $2.2 million.  *Id.*  Agro made two margin payments to StoneX aggregating approximately $825,000.  Thereafter, it determined that it was not responsible for the losses on its trading account and refused to make any further payments.  *Id.* In response, StoneX liquidated Agro's open positions, setoff the proceeds from the liquidation

---

[8]    *Declaration of Iskra Neycheva in Support of StoneX's Response to Agro Santino, OOD's Motion for Provisional Relief*, ECF No. 11 (the "First Neycheva Decl.").

against the outstanding margin call, leaving a Net Settlement Amount, as defined under the
Agreement, of approximately $1.3 million plus interest, attorney's fees, and costs. *Id.* ¶ 14. Agro
refused StoneX's demand of payment of that amount.

On March 2, 2020, based upon its right to payment under the Agreement, StoneX obtained
a preliminary injunction in the Sofia City Court, Civil Division, Bulgaria, freezing all of Agro's
accounts in Bulgaria up to $1.3 million (i.e., the Net Settlement Amount), plus interest and costs.
First Neycheva Decl. ¶ 6. Agro appealed the decision. The Court of Appeal in Bulgaria upheld
the decision and confirmed the preliminary injunction. *Id.*[9]

Section 8.6 of the Agreement provides that New York law governs the Agreement, and that
any judicial action arising under the Agreement must be brought in a New York state or federal
court. On March 30, 2020, StoneX filed a complaint initiating the New York Action to recover
the Net Settlement Amount from Agro, plus interest, attorney's fees, and costs. First Rotenberg
Decl., Ex. 7, ¶ 2. Agro's answer to the complaint included a counterclaim against StoneX,
subsequently amended, seeking to recover the proceeds from the liquidated positions and the
entirety of its net trading losses with StoneX (which exceed $1.5 million), plus interest, attorney's
fees and costs. Panchovska Decl. ¶ 16.

On July 13, 2021, Malina EOOD ("Malina"), a Bulgarian limited liability company, filed
a petition in the Bulgarian Court, alleging that Agro was insolvent or otherwise unable to pay its
debts as they come due in relation to an obligation arising under a contract with Agro dated
April 18, 2019. Panchovska Decl. ¶ 34. On September 21, 2021, StoneX petitioned the Bulgarian
Court to join Malina as an alleged creditor in that proceeding based on the same claim that it is

---

[9]    A copy of the order is annexed as Exhibit 6 to the *Declaration of Jeffrey D. Rotenberg In Support of StoneX's
Response to Agro Santino, OOD's Motion for Provisional Relief*, ECF No. 12 (the "First Rotenberg Decl.").

pursuing in the New York Litigation. First Neycheva Decl.¶ 17. The Bulgarian court approved the joinder at that hearing. *Id.*

On March 11, 2022, the Bulgarian District Court issued a judgment (the "March 11 Judgment")[10] making an affirmative Initial Determination under Article 630 of the BCA that Agro was unable to pay its debts as they came due as of March 20, 2020 (the "Insolvency Date"), and thereby opening the Bulgarian Bankruptcy Proceeding. *See* March 11 Judgment at 18. Article 635 of the BCA provides that, upon the opening of a bankruptcy proceeding, the debtor continues to operate its business under the supervision of a trustee in bankruptcy. First Neycheva Decl. ¶ 21. The March 11 Judgment appointed Ms. Petrova as Agro's temporary trustee. *See* March 11 Judgment at 17. On April 15, 2022, the Bulgarian District Court designated Ms. Petrova as the permanent Trustee. First Neycheva Decl. ¶ 22.

On March 22, 2022, Agro appealed the March 11 Judgment to the Plovdiv Appeals Court in Plovdiv, Bulgaria, on the grounds that the Bulgarian District Court set the Insolvency Date earlier than that provided for by law. That appeal remains pending with the Plovdiv Appeals Court. Panchovska Decl. ¶ 39; First Neycheva Decl. ¶ 24.

### The Chapter 15 Case

**The Chapter 15 Petition for Recognition and Related Relief**

On May 31, 2022, Elena Sivova Chaparova-Dikova, "acting in capacity of [Agro's] Manager, and thus the exclusive repository of executive or managerial authority, of Agro Santino OOD," executed a Power of Attorney appointing Ms. Panchovska as Agro's "attorney in fact and agent" and granting her:

> the full extent of [Agro's] authority [to] represent it in all matters related in any way whatsoever to the Bulgarian commercial bankruptcy case in which the Agro

---

[10]    A copy of the March 11 Decision is annexed as Exhibit C to the Panchovska Declaration.

> Santino OOD is a debtor, Case No. 20215500901241, currently before the Stara Zagora District Court in Stara Zagora, Bulgaria . . . including for purposes of seeking any relief available to a *"foreign representative"* (as that term is defined in U.S. Code, Title 11, Section 101) under U.S. Code, Title 11 , Chapter 15, and any other applicable United States legislation and/or relevant court rules) without limitation or exclusion to the maximum extent permitted by law . . . .

Power of Attorney at 1.[11]  On June 15, 2022, Ms. Panchovska, in her capacity as Agro's putative "foreign representative" filed the Chapter 15 Petition commencing Agro's case under chapter 15 of the Bankruptcy Code (the "Chapter 15 Case").  In the Verified Petition, Agro seeks, without limitation, a determination that:

(i)     it is subject to a pending foreign proceeding within the meaning of 11 U.S.C. § 101(23);

(ii)    the Bulgarian Bankruptcy Proceeding is pending in Stara Zagora, Bulgaria, where Agro's center of main interests is located and, accordingly, the Bulgarian Bankruptcy Proceeding is a "foreign main proceeding" pursuant to 11 U.S.C. § 1502(4) and is entitled to recognition as a foreign main proceeding pursuant to 11 U.S.C. § 1517(b)(1);

(iii)   Ms. Panchovska is Agro's "foreign representative" within the meaning of 11 U.S.C § 101(24);

(iv)    the Chapter 15 Case was properly commenced pursuant to 11 U.S.C. §§ 1504 and 1515;

(v)     the Verified Petition satisfies the requirements of 11 U.S.C. § 1515 and the Foreign Representative is entitled to all relief provided pursuant to 11 U.S.C. §§ 1509(b), 1517, and 1520(a), without limitation, and as ordered by this Court;

(vi)    the requested relief is necessary and appropriate and in the interests of public and international comity, consistent with the public policy of the United States, warranted pursuant to 11 U.S.C. §§ 1509(b), 1517, 1520(a); and

(vii)   the interest of the public will be served by this Court's granting the relief requested by the petitioner.

*See* Proposed Order.

---

[11]    The Power of Attorney is annexed as Exhibit B to the Panchovska Declaration.

**StoneX Objection to the Chapter 15 Petition**

Under chapter 15 of the Bankruptcy Code, the term "debtor" means "any entity that is the subject of a foreign proceeding." 11 U.S.C. § 1502(1). To qualify for relief under chapter 15, a debtor must satisfy the general and specific eligibility requirements of sections 109 and 1517 of the Bankruptcy Code, respectively. Section 1517(a) provides that, after notice and a hearing, and subject to the public policy provisions in section 1506, an order recognizing a foreign proceeding shall be entered if:

> (1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502;
>
> (2) the foreign representative applying for recognition is a person or body; and
>
> (3) the petition meets the requirements of section 1515.

11 U.S.C. § 1517(a). "While not explicit in [section 1517], the foreign proceeding and the foreign representative must meet the definitional requirements set out in sections 101(23) and 101(24)." *In re U.S. Steel Canada Inc*., 571 B.R. 600, 608 (Bankr. S.D.N.Y. 2017) (quoting 8 COLLIER ON BANKRUPTCY ¶ 1517.01 (16th ed. 2017)). The burden rests on the foreign representative to prove each of the requirements of Section 1517. *In re Creative Fin., Ltd. (In Liquidation)*, 543 B.R. 498, 514 (Bankr. S.D.N.Y. 2016). In addition to demonstrating that it satisfies the eligibility requirements of sections 109 and 1517, a chapter 15 debtor must establish that its petition meets the standards set forth in section 1515 of the Bankruptcy Code and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

StoneX contends that the Court should reject the Chapter 15 Petition and deny recognition of the Bulgarian Bankruptcy Proceeding because Agro has not carried its burden to show that it is entitled to relief under chapter 15. Specifically, StoneX contends that Agro has not demonstrated that Ms. Panchovska qualifies as its "foreign representative" as required by sections 1517(a)(2)

and 101(24) of the Bankruptcy Code. Opp. at 1. The latter defines the term "foreign representative" to mean "a person . . . authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding." 11 U.S.C. § 101(24). StoneX does not dispute that the Bulgarian Bankruptcy Proceeding is a "foreign proceeding." It asserts that for Agro to meet its burden of demonstrating that Ms. Panchovska qualifies as its "foreign representative," Agro must show that Ms. Panchovska is authorized under Bulgarian law to act in that capacity. Opp. at 1. StoneX contends that Agro cannot do so because Ms. Panchovska's appointment as the putative foreign representative runs afoul of Article 635 of the BCA. Accordingly, it contends that the Court must reject the Chapter 15 Petition and deny recognition to the Bulgarian Bankruptcy Proceeding.

The Court considers those matters below, in the context of its review of the standards governing recognition of foreign proceedings under chapter 15, as applicable in this case.

## Discussion

### The General Eligibility Requirements

Under section 109(a) of the Bankruptcy Code, for an entity, like Agro, to qualify as a "debtor," it must reside or have a domicile, a place of business, or property in the United States. 11 U.S.C. § 109(a). Section 103(a)(1) makes those general eligibility requirements applicable in chapter 15 cases. *See* 11 U.S.C. § 103(a)(1); *see also Drawbridge Special Opportunities Fund LP v. Katherine Elizabeth Barnet (In re Barnet)*, 737 F.3d 238, 246 (2d Cir. 2013) ("The debtor that is the subject of the foreign proceeding, therefore, must meet the requirements of Section 109(a) before a bankruptcy court may grant recognition of the foreign proceeding."); *In re Cell C Proprietary Ltd.*, 571 B.R. 542, 551 (Bankr. S.D.N.Y. 2017) ("[U]nder section 109(a) and in accordance with *Barnet*, a foreign representative must show that the debtor has either (i) a

domicile, (ii) a place of business, or (iii) *property* in the United States, as a condition precedent to eligibility under 11 U.S.C. § 1517.").

Agro has neither a domicile nor a place of business in the United States. However, its New York counsel holds certain unused retainers from Agro in a bank account in New York City in connection with certain legal services retained in respect of this case. Panchovska Decl. ¶ 48. It is well settled that a retainer account is "property" for purposes of section 109(a). *See, e.g.*, *In re B.C.I. Fins. Pty Ltd. (In Liquidation)*, 583 B.R. 288, 293–94 (Bankr. S.D.N.Y. 2018) (collecting cases). Moreover, in the New York Litigation, Agro is asserting a $1.5 million counterclaim against StoneX. *Id.* Courts have found that a cause of action by a foreign debtor with a situs in New York satisfies the "property in the United States" eligibility requirement. *See In re Berau Cap. Res. PTE Ltd.*, 540 B.R. 80, 82 (Bankr. S.D.N.Y. 2015); *In re Octaviar Admin. Pty Ltd.*, 511 B.R. 361, 370 (Bankr. S.D.N.Y. 2014).

Agro has demonstrated that it has property in the United States and that it qualifies to be a debtor under section 109(a) of the Bankruptcy Code.

**The Specific Eligibility Requirements of Section 1517**

<u>The Eligibility Requirements of Section 1517(a)(1)</u>

The Bulgarian District Court is a court of general jurisdiction that oversees corporate insolvency proceedings while acting in its capacity as a bankruptcy court. Panchovska Decl. ¶ 19. The proceedings are governed by the Bulgarian Bankruptcy Law, which establishes the Bulgarian insolvency regime. *Id.* ¶ 18. Section 1517(a)(1) mandates that a foreign proceeding for which recognition is sought be either "a foreign main proceeding or a foreign nonmain proceeding within the meaning of section 1502." 11 U.S.C. § 1517(a)(1); *see also Bear Stearns High-Grade*

*Structures Credit Strategies Master Fund*, 374 B.R. 122, 126–27 (Bankr. S.D.N.Y. 2007) ("[T]he

recognition must be coded as either main or nonmain."). The term "foreign proceeding" means:

> a collective judicial or administrative proceeding in a foreign country, including an
> interim proceeding, under a law relating to insolvency or adjustment of debt in
> which proceeding the assets and affairs of the debtor are subject to control or
> supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23). In *In re Ashapura Minechem Ltd.*, 480 B.R. 129 (S.D.N.Y. 2012), the district

court construed section 101(23) to consist of the following "definitional elements":

> (i) [the existence of] a proceeding; (ii) that is either judicial or administrative;
> (iii) that is collective in nature; (iv) that is in a foreign country; (v) that is authorized
> or conducted under a law related to insolvency or the adjustment of debts; (vi) in
> which the debtor's assets and affairs are subject to the control or supervision of a
> foreign court; and (vii) which proceeding is for the purpose of reorganization or
> liquidation.

*Id.* at 136 (alteration in original) (quoting *In re Betcorp Ltd.*, 400 B.R. 266, 277 (Bankr. D. Nev.

Feb. 9, 2009)); *see also In re Glob. Cord Blood Corp.*, No. 22-11347, 2022 WL 17478530, at *7

(Bankr. S.D.N.Y. Dec. 5, 2022) (adopting *Ashapura* criteria); *In re ENNIA Caribe Holding N.V.*,

594 B.R. 631, 638 (Bankr. S.D.N.Y. 2018) (same).

The Bulgarian Bankruptcy Proceeding meets those standards. It is a judicial proceeding

pending in Bulgaria, a foreign country, that is being conducted under the Bulgarian Bankruptcy

Law. In considering whether the proceeding is collective in nature, "relevant case law typically

speaks in terms of the proceeding's treatment of and potential benefit to creditors, as well as

emphasizing that the proceeding must concern all interests or the interests of a creditor body as a

whole, not just individuals." *In re Glob. Cord Blood Corp.*, 2022 WL 17478530, at *7. "A

collective proceeding is one that considers the rights and obligations of all creditors. This is in

contrast, for example, to a receivership remedy instigated at the request, and for the benefit, of a

single secured creditor." *In re Betcorp Ltd.*, 400 B.R. at 281. That is to say that "[f]or a proceeding

to be collective within the meaning of section 101(23), it must be instituted for the benefit of

creditors generally rather than for a single creditor or class of creditors." *In re British Am. Ins. Co.*, 425 B.R. 884, 902 (Bankr. S.D. Fla. 2010). Ms. Panchovska asserts that the Bulgarian Bankruptcy Proceeding is "a collective judicial proceeding under a Bulgarian law relating to insolvency." Panchovska Decl. ¶ 50. That is confirmed by her undisputed testimony (including citations to relevant provisions of the BCA) that Bulgarian Bankruptcy Law includes processes for identifying and organizing creditors, *id.* ¶¶ 25–28; evaluating claims, *id.* ¶¶ 26–30, and proposing reorganization plans, *id.* ¶ 31. Moreover, it is undisputed that under the Bulgarian Bankruptcy Law, the Bulgarian District Court directs and supervises insolvency proceedings from opening to closure, and, in doing so, without limitation, makes an initial determination of whether a state of insolvency or over-indebtedness exists with respect to the debtor, appoints a trustee, sets an initial meeting of creditors, allows or disallows creditor claims, examines any proposed restructuring plan, and approves or rejects restructuring plans and/or orders the liquidation of the debtor. *Id.* ¶ 19. The Bulgarian Bankruptcy Proceeding qualifies as a "foreign proceeding" under section 101(23) of the Bankruptcy Code.

A "foreign main proceeding" is a "foreign proceeding pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1502(4). A foreign proceeding "shall be recognized . . . as a foreign main proceeding if it is pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1517(b)(1). The statute does not define the term "center of main interests," although "absen[t] . . . evidence to the contrary, the debtor's registered office . . . is presumed to be the center of the debtor's main interests." 11 U.S.C. § 1516(c). Agro is a Bulgarian limited liability company. Historically, its activities were "entirely contained in Bulgaria," and the limits of its interests outside of Bulgaria were only "to purchase swaps and options in agricultural commodities in 2017 and 2018 from StoneX." Panchovska Decl. ¶ 11. The

uncontested evidence demonstrates that (i) Agro's registered offices have always been located in Bulgaria, (ii) Agro has never maintained any office of any type in a country other than Bulgaria, (iii) all of Agro's employees throughout its history have been employed in Bulgaria under Bulgarian labor contracts, subject to the employment and labor laws of Bulgaria, (iv) Agro's Managers have always been Bulgarians, who lived and worked exclusively in Bulgaria, and (v) all of Agro's banking activity has been exclusively conducted within Bulgaria using bank accounts at banks licensed and located in Bulgaria. *Id.* The Bulgarian Bankruptcy Proceeding qualifies as a "foreign main proceeding" for purposes of section 1517(1), as the evidence demonstrates that Agro's center of main interests is Bulgaria. *See, e.g.*, *In re Fairfield Sentry Ltd.*, 714 F.3d 127 (2d Cir. 2013) (affirming recognition of foreign main proceeding); *In re Ocean Rig UDW Inc.*, 570 B.R. 687, 705 (Bankr. S.D.N.Y. 2017) (recognizing foreign main proceeding).

<u>The Eligibility Requirements of Section 1517(a)(2)</u>

After initiation of a foreign bankruptcy proceeding, a "foreign representative" may petition a United States court to recognize the proceeding under chapter 15. *See* 11 U.S.C. § 1515(a) ("A foreign representative applies to the court for recognition of a foreign proceeding in which the foreign representative has been appointed by filing a petition for recognition."). "[T]he requirement that a foreign representative be authorized in a foreign proceeding is not an onerous one. It has been read broadly to facilitate the purposes of Chapter 15." *In re PT Bakrie Telecom Tbk*, 601 B.R. 707, 716 (Bankr. S.D.N.Y. 2019). Section 1517(a)(2) of the Bankruptcy Code requires that "the foreign representative applying for recognition is a person or body." The Bankruptcy Code defines "person" to include an "individual." 11 U.S.C. 101(41).

Section 1515(b) of the Bankruptcy Code provides that a petition for recognition "shall be accompanied" by either (i) "a certified copy of the decision commencing such foreign proceeding

and appointing the foreign representative;" or (ii) "a certificate from the foreign court affirming the . . . appointment of the foreign representative." *Id.* § 1515(b)(1)–(2). Pursuant to section 1516(a), if the appointing court's decision "indicates that the person or body is a foreign representative, the court is entitled to so presume." *Id.* § 1516(a). However, in the absence of either an order or certificate of the foreign court appointing the foreign representative, no such presumption exists, and the petition must be accompanied by "any other evidence acceptable to the court of the existence of such foreign proceeding and of the appointment of the foreign representative." *Id.* § 1515(b)(3).

Ms. Panchovska, as Agro's putative "foreign representative," filed the Chapter 15 Petition commencing this Chapter 15 Case. The petition includes the March 11 Judgment of the Bulgarian District Court that, among other things, declared Agro insolvent, opened insolvency proceedings against Agro effective March 20, 2020, and appointed Ms. Petrova as Agro's interim trustee. Neither that judgment nor any other judgment or order of the Bulgarian District Court addresses the appointment of Ms. Panchovska as Agro's foreign representative. That issue is resolved by the Power of Attorney, as it specifically provides for the appointment of Ms. Panchovska to serve as Agro's "foreign representative" as that term is defined under the Bankruptcy Code.

Article 635 of the Bulgarian Commercial Act provides:

> Within the bankruptcy proceedings . . . the debtor, or respectively, its bodies, when the debtor is a juridical person, may perform, whether personally or through a person authorized thereby, all procedural actions, which are not expressly delegated to the trustee in bankruptcy.

BCA Article 635(3). Thus, the general rule under Bulgarian law is that upon the commencement of bankruptcy proceedings, existing management continues to represent the debtor and to engage

15

in ordinary course transactions.  Panchovska Decl. ¶ 33.  However, that general rule is limited by application of Article 635(1).  That section provides:

> Upon initiation of the bankruptcy proceedings . . . the debtor shall continue their business under the supervision of the trustee in bankruptcy.  They may conclude new transactions only with prior consent of the trustee in bankruptcy and in compliance with measures imposed with the decision on initiation of the bankruptcy proceedings or with the decision under Article 629a.

BCA Article 635(1).  Accordingly, management must obtain the bankruptcy trustee's prior consent to "conclude new transactions."  Panchovska Decl. ¶ 33.

The Trustee did not approve Agro's retention of Ms. Panchovska.  StoneX contends that Agro's purported retention of Ms. Panchovska as its "foreign representative" via the Power of Attorney was ineffective.  It says that is so because the appointment constitutes a new unilateral transaction made by Agro after the opening of the Bulgarian Bankruptcy Proceeding and, accordingly, pursuant to Articles 635(1) and (3), Agro should have obtained the prior approval of the Trustee to make that appointment, but failed to do so.  Second Neycheva Decl. ¶ 7.  StoneX cites to *Ad Hoc Grp. of Vitro Noteholders v. Vitro, S.A.B. de C.V. (In re Vitro S.A.B. de CV)*, 701 F.3d 1031 (5th Cir. 2012), in support of the proposition that "courts look to the law of the jurisdiction in which the foreign bankruptcy proceeding is taking place" to determine whether a foreign representative is authorized in a foreign proceeding. Opp. ¶ 9.

In *Vitro*, a Mexico-based manufacturer initiated a *concurso* proceeding in Mexico under the Mexican Reorganization Act.  Vitro's board of directors (rather than a Mexican court) appointed the debtor's putative co-foreign representatives (Mr. Sanchez-Mujica and Mr. Javier Arechavaleta Santos), and they commenced the chapter 15 case seeking recognition of the *concurso* as a foreign main proceeding.  *In re Vitro*, 701 F.3d at 1040–41.  A group of Vitro noteholders objected, arguing that the foreign representatives failed to meet the definition of "foreign representative" in section 101(24) of the Bankruptcy Code because, (i) they were not

16

appointed by a foreign court or administrative tribunal; and (ii) even if chapter 15 did not require

such an appointment, the foreign representatives still did not qualify for their positions because

they did not have the authority under Mexican law to administer the reorganization or the

liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding,

as called for under section 101(24). *Id.* at 1046.

On the first issue, the Fifth Circuit concluded that section 101(24) of the Bankruptcy Code

does not require that a foreign representative be appointed by a foreign court or administrative

tribunal. *Id.* at 1047. In reaching that conclusion, the court looked to the "plain meaning" of the

statute and noted that "[s]ection 101(24)—defining the term 'foreign representative'—is wholly

devoid of any statement that a foreign representative must be judicially appointed." *Id.* at 1047.

Moreover, it observed that the section 101(24) "requirement that a representative be 'authorized

in a foreign proceeding' is certainly compatible with appointment by a foreign court, but is hardly

necessary," since it would be equally compatible with a requirement that an individual be

appointed in the context of a foreign proceeding or during a foreign proceeding. *Id.* at 1047. Other

uses of the term "foreign representative" suggested "a much broader reading" than a narrow

requirement that all foreign representatives be court appointed. *Id.* (citing 11 U.S.C. §§ 1509(b),

1515, 1517(a)). The court found additional support for its statutory interpretation in the

UNCITRAL Model Law[12] and the reports of the Working Group on Insolvency Law (the

"Working Group"). Section 101(24) closely follows the corresponding definition in the Model

Law Article 2(d). The Fifth Circuit found that in "drafting this definition, the Working Group

---

[12]    *See In re Black Gold S.A.R.L.*, 635 B.R. 517, 525 (B.A.P. 9th Cir. 2022) ("Chapter 15 incorporates into U.S. bankruptcy law the Model Law on Cross-Border Insolvency (the 'Model Law'), promulgated in 1997 by the United Nations Commission on International Trade Law."); *see also* U.N. Comm'n on Int'l Trade. L., UNCITRAL Model Law on Cross-Border Insolvency with Guide to Enactment and Interpretation, U.N. Sales No. E.14.V.2 (2014), https://uncitral.un.org/sites/uncitral.un.org/files/media-documents/uncitral/en/1997-model-law-insol-2013-guide-enactment-e.pdf.

expressly rejected the requirement that a foreign representative be '[specifically] authorized by statute or other order of court (administrative body) to act in connection with a foreign proceeding.'" *Id.* at 1048 (alteration in original) (quoting UNCITRAL Rep. of the Working Group on Insolvency Law on the Work of the Eighteenth Session, ¶ 111, U.N. Doc. A/CN.9/419 (Dec. 1, 1995), http://www.uncitral.org/uncitral/en/commission/working_groups/5Insolvency.html (the "Dec. 1995 Rep.")).

The Fifth Circuit then considered the second issue. In doing so, the court focused on "whether Sanchez-Mujica's and Arechavaleta-Santos' appointments [as foreign representatives] comport with the remainder of § 101(24)." *Id.* at 1049. In particular, the court looked to whether they had "administrative power over the reorganization of Vitro's business." *Id.* The Fifth Circuit found that the Working Group "clearly intended to include foreign representatives of proceedings in which a debtor in possession remains in control of its assets" and that "the National Bankruptcy Review Commission created by Congress in 1994 to make recommendations on improving bankruptcy law and procedure, in its review of the Model Law, reached the same conclusion." *Id.* The noteholders argued that Vitro could not be classified as a debtor in possession because under Mexican law, that power was reserved for the *conciliador. Id.*[13] They also asserted that "under Chapter 11, a debtor in possession has the rights, powers, and duties of a Chapter 11 trustee, which include the right to negotiate, file, and seek confirmation of a plan of reorganization, and that Vitro lacked this authority." *Id.* The Fifth Circuit rejected those arguments "for relying exclusively on Chapter 11's definition of a debtor in possession," and determined instead that the Working Group

---

[13] The noteholders contended that in a Mexican *concurso*, there are three types of official who might qualify as a foreign representative: (1) a *visitador*, or examiner, who is appointed after the filing to determine whether a debtor qualifies for a *concurso* reorganization; (2) a *conciliador*, or conciliator, who supervises the debtor's business, administers the bankruptcy case, and formulates a creditor repayment plan; and (3) a *síndico*, or liquidator, who is appointed to liquidate the business if a creditor repayment plan is not timely reached. This framework sounds in Article 282 of the *Ley de Concursos Mercantiles*.

18

"understood debtors in possession to include those cases 'in which the debtor remained in control of its assets and could technically be regarded as exercising administration type of functions, although under the supervision of a judicial or administrative authority." *Id.* at 1050 (quoting Dec. 1995 Rep. ¶ 115). It found that "under Chapter 15 the correct analogy is not to whether a debtor meets Chapter 11's definition of a 'debtor in possession,' but whether it meets that definition originally envisioned by the drafters of the Model Law and incorporated into § 101(24)." *Id.* The Fifth Circuit found that there was "little doubt that Vitro met that definition" because it had "presented extensive evidence that it retained broad control over its affairs." *Id.*

Following the Fifth Circuit's decision in *Vitro*, courts in this district hold that section 101(24) does not require that a foreign representative be appointed by court order. They recognize that a board of directors may authorize a person to act as the corporation's foreign representative in a chapter 15 case. *See In re Servicos de Petroleo Constallations S.A.*, 600 B.R. 237, 270 (Bankr. S.D.N.Y. 2019) (finding that a foreign representative appointed pursuant to Brazilian debtors' corporate resolutions was a proper "foreign representative" within the meaning of section 101(24) and thus met the section 1517(a)(2) eligibility requirements); *In re Cell C Proprietary Ltd.*, 571 B.R. at 553 (recognizing that a South African debtor's board resolution appointing foreign representatives satisfied section 101(24)); *In re OAS S.A.*, 533 B.R. 83, 98 (Bankr. S.D.N.Y. 2015) (observing that, under *In re Vitro*, the relevant test is whether the foreign debtor is a debtor in possession within the meaning of the Model Law). In substance, Agro says that is what happened here because it appointed Ms. Panchovska to serve as its "foreign representative" through the Power of Attorney executed in Ms. Panchovska's favor by Agro's sole Member. StoneX does not challenge Agro's right to appoint a foreign representative, but it contends that its right to do so is a matter of Bulgarian law, and, as support, it relies on *In re Vitro*.

However, under *Vitro*, in considering whether a person may serve as a foreign representative, the Court does not look to foreign law governing appointments—it looks to section 101(24). That section is satisfied if the proposed foreign representative is authorized in a foreign proceeding to "act as a representative of such foreign proceeding," or if they are authorized "to administer the reorganization or the liquidation of the debtor's assets or affairs." 11 U.S.C. § 101(24). Here, the relevant question is whether Agro was authorized to administer the reorganization or the liquidation of the debtor's assets or affairs (akin to a debtor in possession in the United States). Contrary to StoneX's contention that this Court must apply foreign law to determine whether a person may serve as a foreign representative in a chapter 15 case, Opp. ¶ 9, under *Vitro*, courts look to United States law, namely section 101(24). When there is no explicit order of appointment by a foreign court, section 101(24) does, of course, examine the powers retained by the debtor in the foreign proceeding to determine if the debtor functions as a debtor in possession (as contemplated by UNCITRAL). The key point in *Vitro* is that United States courts do not conflate an examination of the foreign debtor's authority to operate its business with an analysis of foreign regimes governing the appointment of agents.

The district court in *In re Vitro* looked at this issue in detail. *Ad Hoc Group of Vitro Noteholders v. Vitro, S.A.B. de C.V. (In re Vitro, S.A.B. de C.V.)*, 470 B.R. 408, 412–13 (N.D. Tex. 2012). At the district court, the noteholders contended "that Article 282 of the *Ley de Concursos Mercantiles*, the relevant Mexican law, prohibits a debtor in possession like Vitro from appointing its own foreign representatives." *Id.* at 412. Article 282 holds that the *visitador*, the *conciliador*, or the *sindico* "shall be empowered to act in a foreign State, to the extent permitted by the applicable foreign law, on behalf of a concurso mercantile which has been initiated in the Republic of Mexico pursuant to this Law." *Id.* at 412–13. The noteholders' legal expert testified that

20

Article 282 was the only provision that identified who may serve as a foreign representative, and that it was therefore an exclusive list of those individuals that may serve as such (applying Mexican canons of statutory construction). *Id.* at 413. The district court explicitly held that "the matter of whether Sanchez-Mujica and Arechavaleta are proper foreign representatives is a matter of United States—not Mexican—law." *Id.* Moreover, even if Article 282 did apply, there was "no reason to believe that it is not an exclusive list of the parties who can act as a foreign representative." *Id.*

Likewise, the Fifth Circuit agreed that the relevant issue was whether section 101(24) was satisfied, i.e., whether the foreign debtor was the functional equivalent of a debtor in possession.[14] *In re Vitro*, 701 F.3d at 1050. It observed that "if Vitro were not permitted to proceed as a debtor in possession, with the power to appoint foreign representatives, it is unclear who would." *Id.* For example, a *conciliador*'s role was to act as a mediator between the debtor and creditors, a *visitador* only determined whether the *concurso* debtor met the legal liquidity requirements, and the *sindico* was charged with liquidation only if a plan was not timely reached—none of these appointed officials possessed "the full authority the Noteholders argue is required under § 101(24)." *Id.* at 1050–51. Accordingly, it is clear that the *Vitro* cases eschewed application of foreign laws governing the appointment of representatives in favor of the test of a foreign debtor's authority to manage its affairs pursuant to section 101(24) of the Bankruptcy Code.

The unrefuted evidence demonstrates that Agro is acting as a debtor in possession. First, Agro has submitted the power of attorney designating Ms. Panchovska as Agro's representative in all Bulgarian and United States courts. Panchovska Decl., Ex. B. This document is dated May 31,

---

[14]   It should be noted that, on appeal from the district court, the Fifth Circuit did not consider whether the foreign representatives had the authority to represent the *concurso*. *In re Vitro*, 701 F.3d at 1049 & n.19. As in *In re Vitro*, the Court today does not "opine on the limits of authorization to 'act as a representative,' because that issue is not pertinent here." *In re Vitro*, 701 F.3d at 1049 n.19.

2022. *Id.* On its face, this letter shows that Ms. Panchovska was appointed in the context of the Bulgarian proceeding. Second, Agro has submitted a letter from Ms. Petrova, the Trustee, to Agro's sole Manager, dated April 5, 2022, which clarifies the scope of the manager's ability to operate Agro's business. That letter unambiguously explains as follows: "Until a judicial act under Article 635, Paragraph 2 of the Commercial Act or under Article 711 Paragraph 1 of the commercial act is delivered, the company's manager has the right and obligation to manage and represent it, including in the pursuit of legal actions about its property, as the case you request my assistance for is." Panchovska Decl., Ex. E at 1. Thus, the Trustee has acknowledged that the company's manager has an obligation to manage and represent Agro. *See id.* Third, Agro submitted its letter to the Bulgarian District Court, dated June 6, 2022, in which the Manager notified that court of the proceedings initiated in this Court. Panchovska Decl., Ex. E

The April 2022 letter from the Trustee shows that Agro retains the ability to control its own affairs and function like a debtor in possession, as contemplated by section 101(24). *See In re Vitro*, 701 F.3d at 1047–49. Indeed, this point is uncontested by StoneX, which focuses only on the propriety of Ms. Panchovska's appointment under Bulgarian law. *See generally* Opposition. The May 2022 power of attorney extended Agro's authority "to administer the reorganization or the liquidation of the debtor's assets or affairs" to Ms. Panchovska in the context of the foreign insolvency proceeding. 11 U.S.C. § 101(24). Under *Vitro*, that satisfies the section 101(24) requirements. Moreover, the Bulgarian court is on notice of these proceedings, as was the Mexican court in *Vitro*. *See In re Vitro*, 701 F.3d at 1048. Since June 2022, the Bulgarian court has not taken any action (of which this Court is aware) to enjoin Agro from appointing or continuing to retain Ms. Panchovska. As in *Vitro*, the Bulgarian court's maintenance of the status quo lends further credence to the view that Agro had the authority to appoint Ms. Panchovska. Accordingly,

this Court finds that Agro retains the ability to operate as a debtor in possession during the Bulgarian insolvency, and therefore the Court concludes that Agro has sufficient authority to authorize Ms. Panchovska to act as the foreign representative in this insolvency.

In keeping with the principles of comity, this Court is reluctant to opine on questions of Bulgarian law, recognizing that the Bulgarian court is best positioned to interpret its own laws. However, even if this Court were to wade into the complexities of Bulgarian law, it would still determine that Ms. Panchovska's appointment as foreign representative is valid. Essentially, StoneX challenges Ms. Panchovska's appointment on the ground that it was a new transaction for which Agro was required to obtain prior permission from the Trustee. Opp. ¶ 9. It points to "Decision No. 252," a Bulgarian case that StoneX says stands for the proposition that "a 'new transaction' occurs when a debtor company enters into an agreement with an agent under which the agent will incur fees."[15] *Id.* ¶ 11. StoneX says that, in Decision No. 252, an attorney entered into an agreement with a debtor for legal representation after the debtor's insolvency had begun, which violated Article 635(1). *Id.* As a consequence, "the Bulgarian court denied the attorney's claims for fees." *Id.* StoneX reasons that because the "same unauthorized conduct occurred here," Ms. Panchovska must therefore be "without authorization to bring this Chapter 15 proceeding as a matter of Bulgarian law and does not qualify to serve as a duly authorized foreign representative." *Id.* ¶ 12. StoneX relies on the Trustee's June 2022 letter to establish that Agro has not received the Trustee's consent to enter into a new transaction with Ms. Panchovska. *Id.* ¶ 13. That letter provides as follows:

> 1. Agro Santino OOD has not requested and I have not given prior consent in my capacity as Bankruptcy Administrator to authorize attorney-at-law Yordanka

---

[15] An English translation of Decision No. 252 was submitted as Exhibit 2 to the Rotenberg Declaration.

Ivanova Panchovska as "foreign representative" under case No. 22-10756 (JLG), filed before the U.S. Bankruptcy Court, South Area of New York.

2. I am not aware of whether Agro Santino OOD has concluded a legal representation contract with attorney-at-law Panchovska for the services provided as "foreign representative" in the above-mentioned case in the USA and in return of what remuneration;

3. Agro Santino OOD has not sought, and I have not given prior consent in my capacity as Bankruptcy Administrator for the conclusion of a contract for legal representation with attorney-at-law Panchovska for the services provided as "foreign representative" in the above-mentioned case in the USA.

Second Rotenberg Decl., Ex. 4 at 1.

Central to StoneX's argument is its assumption that "it is highly unlikely [Ms. Panchovska] is representing Agro without incurring fees." Opp. ¶ 14.[16]  StoneX lays its argument out quite plainly: "If the Foreign Representative is incurring fees for her services, which will be sought later in the bankruptcy proceeding, her appointment by Power of Attorney constitutes a new transaction that required prior approval by the Trustee." Id.  However, the Reply upends that premise.  In that document, Agro makes it clear that Ms. Panchovska's fees will not be paid by Agro—instead, they will be paid by a creditor of Agro.  Reply ¶ 6.  Even accepting arguendo StoneX's view that a Bulgarian debtor's retention of a lawyer to assist in a bankruptcy is a new transaction that requires approval, that is only with respect to the payment of the fees.

The Court also notes that, in Decision No. 252, the matter underlying the litigation was a "claim for attorney's fees under an agreement dated May 17, 2013, signed between the litigants, in connection with contracts concluded with the defendant company in the period from March 22, 2010 to August 26, 2013."  Decision No. 252 at 4.  That is, the litigation arose "from contracts for

---

[16]    StoneX points out that, if Ms. Panchovska is not receiving fees, she is in violation of Bulgarian law.  Article 38(1) of the Bulgarian Attorneys Act generally prohibits attorneys from providing pro bono services.  Second Neycheva Decl. ¶ 10.

legal protection and assistance concluded in the period March 22, 2010 - August 26, 2013, subject

of a special agreement dated May 17, 2013." *Id.* at 3. Essentially, Decision No. 252 arose in the

context of an attorney seeking compensation for years of work that the fiduciary of the insolvent

business had not correctly authorized. That is a very different posture from this case, in which Ms.

Panchovska assures all parties that she will not be seeking fees from Agro. The Court is skeptical

that Decision No. 252 stands for the unfettered proposition that a Bulgarian debtor must seek a

trustee's approval before retaining an attorney to facilitate the insolvency process. In any event,

Decision No. 252 is plainly distinguishable from the circumstances in this case.

It is worth noting that, while the Trustee in this case sent a letter to StoneX explaining that

Agro had not requested her approval to retain Ms. Panchovska, nor had she granted it, the Trustee

does not opine in that letter whether she believes that Ms. Panchovska's retention was improper.

Second Rotenberg Decl., Ex. 4 at 1. Moreover, in response to Agro's earlier letter inquiring about

its authority under Bulgarian law, the Trustee stated that "the company's manager has the right

and obligation to manage and represent it, including in the pursuit of legal actions about its

property, as the case you request my assistance for is." Panchovska Decl., Ex. E at 1. That line

could be fairly read to suggest that a debtor's manager is permitted (even obliged) to secure

representation "in the pursuit of legal actions about its property." *Id.* Tellingly, this Court has not

been apprised of any actions taken by the Trustee to challenge Ms. Panchovska's appointment.[17]

---

[17]    The Court observes that the Fifth Circuit in *Vitro* noted that a Mexican court had explicitly rejected an attempt to challenge the foreign representatives' appointments in that court. *In re Vitro*, 701 F.3d at 1048. The Fifth Circuit pointed to the foreign court's actions as indicative of the propriety of the foreign representatives' appointments under foreign law. *Id.* ("In deciding not to enjoin the foreign representatives' conduct, the Mexican court gave the representatives its tacit approval."). *Id.* Here, the Court is not aware any action taken by the Bulgarian courts to enjoin Ms. Panchovska's participation in this chapter 15 proceeding. While the Court's holding today is not affected by its interpretation of Bulgarian law, it is reassuring that our colleagues in Bulgaria have not reached a contradictory result with respect to the appointment.

25

In short, StoneX's arguments with respect to Bulgarian law would not be persuasive even if the Court were compelled to determine those issues of foreign law. However, the Court need not and does not reach those issues today.

The Eligibility Requirements of Section 1517(a)(3)

Section 1517(a)(3) incorporates the requirements of section 1515 of the Bankruptcy Code, as it directs that the debtor's chapter 15 petition must "meet[] the requirements of section 1515." 11 U.S.C. ¶ 1517(a)(3). Under section 1515(a), "[a] foreign representative applies to the court for recognition of a foreign proceeding in which the foreign representative has been appointed by filing a petition for recognition." 11 U.S.C. § 1515(a). Agro has satisfied that provision because Ms. Panchovska, its putative foreign representative, filed the Chapter 15 Petition in this Court. Section 1515(b) directs that a petition for recognition be accompanied by evidence of the existence of the foreign proceeding and of the appointment of the foreign representative. Agro has met its burden under that section because the Verified Petition includes copies of the Bulgarian District Court's March 11 Judgment commencing the Bulgarian Bankruptcy Proceeding, and the Power of Attorney purporting to appoint Ms. Panchovska as Agro's foreign representative. Section 1515(c) mandates that a petition for recognition be accompanied by a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative. Agro complied with that provision as it filed a statement which lists the Bulgarian Bankruptcy Proceeding as its only pending insolvency proceeding. *See* Panchovska Statement ¶ 3. Finally, Agro complied with section 1515(d) because all the requisite papers originally written in Bulgarian have been translated into English. *See, e.g.*, March 11 Judgment; Power of Attorney. The Court finds that the Agro has met all the requirements of section 1515 of the Bankruptcy Code.

**The Reporting Requirements of Bankruptcy Rule 1007(a)(4)**

Bankruptcy Rule 1007(a)(4) is applicable to cases under chapter 15.  It provides that:

[A] foreign representative filing a petition for recognition under chapter 15 shall file with the petition: (A) a corporate ownership statement containing the information described in Rule 7007.1; and (B) unless the court orders otherwise, a list containing the names and addresses of all persons or bodies authorized to administer foreign proceedings of the debtor, all parties to litigation pending in the United States in which the debtor is a party at the time of the filing of the petition, and all entities against whom provisional relief is being sought under § 1519 of the Code.

Fed. R. Bankr. P. 1007(a)(4).  The evidence submitted in this Chapter 15 Case demonstrates that Agro has satisfied each of the reporting requirements of the Bankruptcy Rule 1007(a)(4).  Agro filed a corporate ownership statement.  *See* Rule 1007 Lists ¶ 1.  Moreover, it filed (i) a list of persons authorized to administer its foreign proceedings; and (ii) a list of all known litigation. *Id*. ¶¶ 2–3.  Agro has met all the requirements of Rule 1007(a)(4) of the Bankruptcy Rules.

**The Public Policy Exception Is Not Applicable**

Section 1506 of the Bankruptcy Code qualifies recognition of a foreign proceeding based upon United States public policy.  It provides that "[n]othing in this chapter prevents the court from refusing to take an action governed by this chapter if the action would be manifestly contrary to the public policy of the United States."  11 U.S.C. § 1506.  The public policy exception "is intended to be invoked only under exceptional circumstances concerning matters of fundamental importance for the United States." *In re Millard*, 501 B.R. 644, 651 (Bankr. S.D.N.Y. 2013) (quoting *In re Ran*, 607 F.3d 1017, 1021 (5th Cir. 2000)); *see also Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 139 (2d Cir. 2013) (finding that the legislative history confirms that  the "statutory wording requires a narrow meaning," as it provides that the "word 'manifestly' in international usage restricts the public policy exception to the most fundamental policies of the United States" (quoting H.R. Rep. No. 109-31, pt. 1, at 109 (2005), *as*

27

*reprinted in* 2005 U.S.C.C.A.N. 88, 171)).   Accordingly, courts construe the exception narrowly

and show deference to foreign proceedings that comply with fundamental standards of fairness.

*See Oilsands Quest Inc.*, 484 B.R. 593, 597 (Bankr. S.D.N.Y. 2012).   There is no violation of

United States public policy as the proceedings in the Bulgarian District Court "progressed

according to the course of a civilized jurisprudence and . . . the procedures followed [therein] meet

our fundamental standards of fairness."   *In re Rede Energia S.A.*, 515 B.R. 69, 107 (Bankr.

S.D.N.Y. 2014).

## Conclusion

Based on the foregoing, the Court grants the Chapter 15 Petition and recognition of the

Bulgarian Bankruptcy Proceeding.  Agro is directed to settle an order.

Dated: New York, New York
       July 24, 2023

/s/ *James L. Garrity, Jr.*

Hon. James L. Garrity, Jr.
U.S. Bankruptcy Judge

28